UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

SUSAN SIEGEL

       Plaintiff,

   v.

INVERNESS MEDICAL
INNOVATIONS, INC.

       Defendant.

------------------------------------------------------

CASE NO. 1:09-CV-1791

OPINION & ORDER
[Resolving Doc. Nos. 8 & 13.]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Inverness Medical Innovations, Inc. has moved for partial judgment on the pleadings. [Doc. 8.] Plaintiff Susan Siegel opposes the Defendant's motion. [Doc. 13.] For the following reasons, the Court **DENIES** the Defendant's motion.

**I. Background**

Plaintiff Susan Siegel filed this employment discrimination action against her former employer, Inverness Medical Innovations, Inc., who terminated her when it decided to reduce its workforce in 2007. [Doc. 1.] Siegel alleges that although she received positive performance evaluations and satisfied her assigned sales quotas, the Defendant terminated her and instead retained male and younger female employees with poorer performance evaluations and less experience. [Doc. 1 at ¶¶ 7, 9, 12, 13.]

Siegel brought claims for age discrimination under the Age Discrimination in Employment Act, for gender discrimination under federal and Ohio law, and—relevant to this motion—for

Case No. 1:09-CV-1791
Gwin, J.

"gender plus" and "age plus" discrimination under federal and Ohio law. [Doc. 1 at ¶¶ 15-77.] A "gender plus" (or "age plus") claim is one that alleges discrimination on the basis of gender (or age) as well as another characteristic. The claim says that although the employer did not discriminate against all female (or elderly) employees, among a subclass of employees with another characteristic, the employer did discriminate against female (or elderly) employees in that subclass.

Inverness moves for judgment on the pleadings on Siegel's "gender plus" and "age plus" claims. [Doc. 8.] Inverness makes two independent arguments. [Doc. 8, Ex. 1 at 4-9.] First, Inverness argues that "gender plus" and "age plus" claims are not viable under either federal or Ohio law. [Doc. 8, Ex. 1 at 4-5, 9.] Second, Inverness contends that even if these claims were viable, Siegel failed to present them to the Equal Employment Opportunity Commission, and thus the doctrine of administrative exhaustion prohibits her from raising them before this Court. [Doc. 8, Ex. 1 at 5-9.]

## II. Legal Standard

On a motion for judgment on the pleadings under Federal Civil Rule 12(c), the Court employs the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Thus, "'[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (citation omitted). Additionally, on a 12(c) motion, the Court may consider exhibits incorporated by reference into the pleadings—like an employment discrimination plaintiff's EEOC charge. *See, e.g.*, *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

Case No. 1:09-CV-1791
Gwin, J.

### III. Analysis

Defendant Inverness first argues that neither federal nor Ohio law allows claims for "gender plus" or "age plus" discrimination. [Doc. 8, Ex. 1 at 4-5, 9.] In support, Inverness cites two unpublished Sixth Circuit cases that it claims stand for the proposition that "gender plus" and "age plus" discrimination claims are not actionable. *See Schatzman v. County of Clermont*, No. 99-4066, 2000 WL 1562819, at *9 (6th Cir. Oct. 11, 2000); *Sherman v. Am. Cyanamid Co.*, No. 98-4035, 1999 WL 701911 (6th Cir. Sept. 1, 1999).

Inverness's argument fails. The Supreme Court has recognized that "gender plus" claims are viable. In *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971) (per curiam), a job applicant brought a gender discrimination claim against an employer who refused to accept job applications from women with pre-school-age children (like the plaintiff), although it employed men with pre-school-age children. The district court and the Fifth Circuit both agreed that her claim failed as a matter of law because "75-80% of those hired for the position [that the plaintiff sought] were women, hence no question of bias against women as such was presented." 400 U.S. at 543. But the Supreme Court reversed, holding that the plaintiff could pursue her claim because the employer treated her less favorably than males with pre-school-age children. *Id.* at 544. It was no defense, in the Court's view, for the employer to point to the women it hired for the position; the relevant comparison was between *similarly situated* males and females.[1] The Court explained that Title VII "requires that persons of like qualifications be given employment opportunities irrespective of their sex. The Court of Appeals therefore erred in reading this section as permitting one hiring policy for

---

[1] In a sense, nearly *all* discrimination claims are "plus" claims; they allege that the defendant treated the plaintiff less favorably on the basis of gender (or age, or race, etc.) "plus" similar qualifications.

-3-

Case No. 1:09-CV-1791
Gwin, J.

women and another for men—each having pre-school-age children." *Id.*

Nor do the two unpublished Sixth Circuit cases support Inverness's position. Rather than holding that "gender plus" and "age plus" claims are not actionable, those cases expressly declined to decide the issue, finding that even if such claims were actionable, the plaintiffs failed to adduce sufficient evidence to defeat summary judgment. *See Schatzman*, 2000 WL 1562819, at *9 (holding that plaintiff failed to establish *prima facie* case on other grounds, but noting: "[w]e are mindful of the fact that employers retaining employees in a protected class are not automatically immune from discrimination liability. All the same, we decline the invitation to decide the 'sex plus' charge partly because it is unnecessary for us to do so."); *Sherman*, 1999 WL 701911, at *1 ("[T]he plaintiff [asks] us to recognize a new cause of action for sex plus age discrimination, or discrimination against 'older women.' We decline the invitation to decide the issue, partly because it is unnecessary for us to do so. Assuming [the plaintiff] made out a *prima facie* case for such a claim, she nevertheless was not able to establish that the defendant's reason for discharging her . . . was pretextual.").

Inverness offers no reason why "age plus" claims should not be cognizable even if "gender plus" claims are. Inverness does, however, attack Siegel's "age plus" claim on the ground that she brings it under Title VII—under which age is not a protected classification—instead of the ADEA. [Doc. 8, Ex. 1 at 9.] The Court thus grants Siegel leave to amend her complaint to bring her "age plus" claim under the ADEA. *See, e.g.*, *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (holding that, notwithstanding plaintiff's unjustified delay, district court's refusal to allow plaintiff to amend complaint to bring claim under proper statutory provision was abuse of discretion when "rejection of the amendment would preclude plaintiff's opportunity to be heard on the merits on facts which are well known to the parties and which were pleaded at the outset although relief was

-4-

Case No. 1:09-CV-1791
Gwin, J.

erroneously sought under [a different statutory provision]").

Inverness's argument that Ohio law prohibits "plus" claims fares no better. As Inverness recognizes, "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981) (citations omitted). Thus, because "plus" claims are viable under federal law, they are also viable under Ohio law.

Nevertheless, Inverness argues that even if "plus" claims in general are viable, Siegel's are not because she failed to administratively exhaust them. [Doc. 8, Ex. 1 at 5-9.] Inverness points out that although Siegel's EEOC charge stated that Inverness discharged her and "other females" "due to sex, female . . . and my age, 52," it did not mention her "plus" claims or any subclass of protected employees. [Doc. 8, Ex. 1 at 6 (citing Doc. 8, Ex. 2).]

Inverness is correct that a plaintiff may not bring a federal employment discrimination action against her employer for claims that she did not first present to the EEOC. *See, e.g.*, *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). But Inverness is incorrect that Siegel's "gender plus" and "age plus" claims fall beyond the scope of her EEOC charge. A plaintiff may bring a judicial complaint for any claims within "the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Equal Employment Opportunity Comm'n v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977) (quotation marks omitted). The Sixth Circuit has cautioned that "[c]harges of discrimination, which . . . are often filed by lay complainants, should not result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial

-5-

Case No. 1:09-CV-1791
Gwin, J.

pleading." *Equal Employment Opportunity Comm'n v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980).

Here, Siegel's "gender plus age" and "age plus gender" claims fall within the scope of her EEOC charge. By alerting the EEOC that she suspected that she was a victim of gender and age discrimination, the natural scope of the EEOC's subsequent investigation would include an examination of Inverness's treatment of older female employees vis-a-vis younger female employees and elderly male employees.[2/] A charge that explicitly mentioned Siegel's "gender plus age" and "age plus gender" claims would "contain the same common core of operative facts." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 528 (6th Cir. 2005).

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Inverness's motion for partial judgment on the pleadings.

IT IS SO ORDERED.

Dated: November 6, 2009   s/ *James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE

---

[2/]This case is thus distinguishable from *Jaskowski v. Rodman & Renshaw*, 842 F. Supp. 1094 (N.D. Ill. 1994), cited by Inverness, because there—unlike here—the gender discrimination plaintiff's EEOC charge made no mention of the additional alleged bases of discrimination (there, women who were working mothers, women with husbands with well-paying jobs, and women who were ill). *See id.* at 1103 ("[T]here is nothing in [the plaintiff's] charge to indicate that she intended to claim discrimination on anything other than her gender and her condition of pregnancy."). Here, by contrast, Siegel's EEOC charge mentioned both gender and age, so the EEOC had notice of both bases of her "gender plus age" and "age plus gender" claims.